UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TONY PERALES,

        Plaintiff,

        v.                                  Case No. 24-cv-1454-bhl

CO ANDERSON,
JOHN/JANE DOE NURSES,
MICHELE DE LA PAZ,
PETER STANISZEWSKI,
RICHARD CRAIG, and
DENNIS KELLEN,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Tony Perales, who is currently serving a state prison sentence at the Stanley Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated while he was incarcerated at the Walworth County Jail. This matter comes before the Court on Perales' motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Perales has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Perales has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an

initial partial filing fee of $15.61. Perales' motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Perales, in August 2021, he injured his back and right leg and foot in a car accident. On October 7, 2021, a nurse sent an email to jail corrections and medical staff, informing that "Perales should be using the walker at all times in the Pod except when he is getting his tray." The email also explained that, "[w]henever he leaves the pod he can use the wheelchair. We review with Dr. Allision weekly and [] will notify you if anything changes." Dkt. No. 1 at 4; Dkt. No. 1-1 at 29. According to Perales, he was "continuously denied use of the wheelchair." He filed grievances on this issue and was informed by John/Jane Doe nurses that the doctor approved use of a wheelchair only for long distances. A responding nurse further explained that medical staff did not want him to use the wheelchair all the time because "sitting in the wheelchair all the time is going to make things worse." Dkt. No. 1-1 at 2.

Perales asserts that he filed two medical requests on October 26, 2021 about various concerns, including pain in his foot and ankle. He noted that he had been complaining about the pain for more than three months. A nurse responded that the doctor had just examined him and had not found anything to explain why he was in pain. The nurse also confirmed that Perales could use the wheelchair for long distances and reminded him that he has been instructed numerous times that he has to walk. The nurse instructed Perales to stop harassing medical staff about using a wheelchair. The nurse further noted that, while physical therapy is not provided at the jail, Perales had been given exercises to complete. Finally, the nurse confirmed that an offsite appointment with a bone and muscle specialist had been scheduled. Dkt. No. 1-1 at 4-6.

Perales asserts that, on October 29, 2021, a nurse clarified that he was allowed to use a wheelchair to get his food tray and for long distances. Nonetheless, according to Perales, "all other medical staff and jail staff refused to allow me to use my wheelchair to get my tray even after my fall." Dkt. No. 1 at 6. Perales does not explain what fall he is referring to, nor does he offer any specific instances of a medical or jail staff member refusing to allow him to use his wheelchair.

According to Perales, on November 7, 2021, he complained that he had a lot of pain the prior week. In response, a nurse stated, "You need to be putting weight on that foot and walking on it. There is nothing else we can give you for the pain. You can buy Tylenol or ibuprofen from commissary to use between med passes." Notes from a visit with an offsite specialist a couple of weeks later confirms that Perales had been prescribed and was taking 500mg of naproxen twice per day. The nurse also informed Perales that use of a wheelchair was "up to our doctor here as you have been told multiple times." Dkt. No. 1-1 at 13-14, 25.

Perales next asserts that on November 10, 2021, CO Anderson got a phone call about Perales eating while sitting in his wheelchair. Perales asserts that Anderson ordered him to get out of the wheelchair and took it away. He further asserts that, in response to his grievance about the incident, Sgt. Michele De La Paz instructed him that he "can not use the wheelchair outside of retrieving food and during long distances. [He is] not to hang out in the wheelchair, [he is] to use it to set the tray down and that is it." A few days later, on November 14, 2021, Peter Staniszewski further clarified that Perales is "to use the wheelchair to retrieve [his] food then put the wheelchair away [he is] not to be sitting in the wheelchair eating [his] food." Perales highlights that this clarification is not in the October 7, 2021 email. Dkt. No. 1 at 6-7; Dkt. No. 1-1 at 11-12.

On November 14, 2021, Perales alleges he was in the medication line when he asked a nurse to look at the bruising on his foot after handing out medication. She agreed, but Anderson

allegedly started yelling at Perales to move away from the medication cart. Perales alleges that he went to the day room to wait for the nurse, but Anderson denied Perales access to the nurse. Instead, Anderson instructed Perales to submit a medical request. Perales explains he could not submit a request because he had lost access to the tablets for a few days and that is the only way to submit a request. Anderson refused to call health services or a sergeant. Despite Perales' allegations that he was not allowed to access the tablet, he filed a grievance on that same day about Anderson's actions. Richard Craig responded to Perales by highlighting that Perales "took [his] medications and continued to want to discuss a subject that has been answered time and time again." He further noted that if Perales has "new concerns" he may "submit them the proper way," and "not disrupt medication pass." Dennis Kellen further responded to a different grievance on this same issue that, "[w]hile on lockdown tablets are not available. This does not preclude [an inmate] from contacting the duty officer for acute or emergency medical needs. In this case, the duty officer can then make contact with medical personnel as necessary." Dkt. No. 1 at 8-9; Dkt. No. 1-1 at 18-20.

Finally, in December 2021, Perales filed multiple grievances about the jail not providing him with physical therapy as an offsite specialist had recommended on November 19, 2021. Specifically, the specialist stated, "For right foot and ankle pain and right knee pain, I recommend referral to Orthopedics Department for further evaluation. If no orthopedic lesion found, he may benefit from referral to interventional pain anesthesiologist for possible complex regional pain syndrome affecting right lower extremity." The specialist recommended physical therapy for Perales' complaints of "lower back pain." He stated that Perales could follow up with him "after physical therapy for his back related symptoms." In January 2022, medical staff confirmed that Perales' follow-up appointments had been scheduled. Dkt. No. 1 at 10; Dkt. No. 1-1 at 24-26.

## The Court's Analysis

It appears that Perales was a pretrial detainee at the time he was confined at the Walworth County Jail, so claims related to his medical care arise under the Fourteenth Amendment. Under *Miranda v. County of Lake*, such claims are subject only to the objective unreasonableness standard. 900 F.3d 335, 352 (7th Cir. 2018). Thus, to state a claim, the Court must be able to reasonably infer from Perales' allegations that Defendants "acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case" and that the challenged conduct was objectively unreasonable. *McCann v. Ogle County, Ill.*, 909 F.3d 881, 886 (7th Cir. 2018) (citations omitted).

Perales asserts that numerous unidentified nurses acted unreasonably when they refused to allow him to use a wheelchair as often as he wanted. However, it has long been held that inmates are not entitled to their preferred treatment. *See, e.g., Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Perales was repeatedly informed that the doctor at the jail (who is not a Defendant) wanted Perales to walk short distances with a walker because constant use of a wheelchair would worsen his condition. Perales clearly disagrees with this assessment, but he offers no factual allegations from which the Court can reasonably infer that the nurses' deference to the doctor's opinion was unreasonable or that the doctor's order posed a serious and obvious risk to his health. *See, e.g., Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012). Perales therefore fails to state a claim against the unidentified nurses on this basis.

Similarly, Perales does not state a claim against Anderson, De La Paz, or Staniszewski based on allegations that they strictly enforced medical staff's email about when Perales could use a wheelchair and refused to let him eat in his wheelchair after retrieving his food tray. No factual allegations in the complaint suggests that these officers, who are not medical professionals, acted

6

unreasonably when the deferred to medical staff's orders as they understood them. *See, e.g., Arnett v. Webster*, 658 F.3d 742, 755-56 (7th Cir. 2011) (explaining that non-medical staff may rely on the expertise of medical personnel).

Nor does Perales state a claim against Anderson, Craig, and Kellen in connection with Anderson's refusal to let Perales discuss his concerns about his foot pain with a nurse during medication pass. Inmates are not permitted to break jail rules just because they believe they have good reason to do so, and jail staff do not act unreasonably when they strictly enforce jail rules. Per the documents Perales attached in support of his complaint, inmates are not permitted to seek general medical advice while nurses are handing out medication; instead, they must submit a medical request through the tablet, or, in the case of an emergency, contact an officer who can decide whether health services should be immediately notified.

Perales asserts that Anderson acted unreasonably because he refused to contact a nurse even though he had taken away Perales' tablet privileges for a few days. But Perales' allegation that he was unable to use a tablet is contradicted by the fact that he submitted two grievances that very day. And, even if Anderson delayed Perales' opportunity to submit a medical request by a couple days, nothing in the complaint suggests that Perales was harmed by this short delay, as medical staff was well aware of Perales' complaints of foot pain (indeed, he had personally raised the issue to a nurse just minutes before) and there was no need for emergency intervention in this long-standing condition for which Perales was already receiving care (in fact, Perales was seen by an offsite specialist just days later). *See, e.g.*, *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (holding that the delay, as opposed to the underlying condition, must cause some degree of harm). Perales therefore does not state a claim on this basis.

7

Case 2:24-cv-01454-BHL       Filed 01/08/25       Page 7 of 11       Document 7

Perales also fails to state a claim against De La Paz, Staniszewski, Craig, and Kellen to the extent their only involvement was to deny Perales' grievances.  It has long been held that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation," so a staff member "who rejects an administrative complaint" does not violate the Constitution. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

Finally, Perales does not state a claim based on allegations that he did not receive physical therapy while at the jail despite an offsite specialist recommending it.  First, as previously explained, inmates are not entitled to their preferred treatment, nor is it reasonable to suggest that all medical providers will agree on appropriate treatment for a  particular condition.  The fact that one provider believes physical therapy may be beneficial does not mean that a different provider acts unreasonably simply because he does *not* believe physical therapy would be beneficial.  Next, the nurses who responded to Perales' complaints merely informed him that the jail does not have onsite physical therapy (although at least one nurse confirmed that Perales had been given stretches to complete).  Nothing in the complaint suggests that these nurses had the authority to send Perales offsite for physical therapy.  Indeed, at least one nurse clarified that the jail doctor was responsible for medical treatment decisions.  Perales does not, however, sue the jail doctor.  *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (holding that a defendant is liable for damages under §1983 only if she was personally responsible for the deprivation of a constitutional right).  And the nurses will not be liable for failing to take steps beyond their power.  *See Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012).

The documents Perales attached to his complaint indicate that he was seen by the jail doctor regularly, was prescribed pain medication, was given stretches to complete, was provided a walker for short distances and a wheelchair for long distances, and was referred to an offsite specialist

when the cause of his persistent pain could not be identified. Although Perales wanted medical staff to do more, the Court cannot reasonably infer from the totality of the care he received that Defendants acted unreasonably in response to his complaints, so he fails to state a claim upon which relief can be granted.

The Seventh Circuit has explained that the norm is to afford a plaintiff at least one opportunity to amend his complaint. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). Accordingly, if Perales believes he can cure the deficiencies identified in this decision, he may file an amended complaint by **February 7, 2025**. He is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). If an amended complaint is received by the deadline, the Court will screen it as required by 28 U.S.C. §1915A. If an amended complaint is not received, the Court will dismiss this action based on Perales' failure to state a claim in his original complaint. If Perales does not believe he can cure the deficiencies identified in this decision, he does not have to do anything further. The Court will enclose an amended complaint form along with this decision.

**IT IS THEREFORE ORDERED** that Perales' motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that on or before **February 7, 2025**, Perales may file an amended complaint if he believes he can cure the defects in the original complaint as described in this decision.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Perales a blank prisoner amended complaint form along with this order.

**IT IS FURTHER ORDERED** that the agency having custody of Perales shall collect from his institution trust account the $334.39 balance of the filing fee by collecting monthly payments from Perales' prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Perales is transferred to another institution, the transferring institution shall forward a copy of this Order along with Perales' remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Perales is located.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Perales is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on January 8, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge