UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

___

TONY PERALES,

        Plaintiff,

        v.                                         Case No. 24-cv-1454-bhl

CO ANDERSON,
JOHN/JANE DOE NURSES,
RICHARD CRAIG,
DENNIS KELLEN, and
DR. ALLSION,

        Defendants.

___

## SCREENING ORDER

___

        Plaintiff Tony Perales, who is currently serving a state prison sentence at the Stanley Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated while he was incarcerated at the Walworth County Jail. On January 8, 2025, the Court screened the complaint, and after concluding it failed to state a claim upon which relief could be granted, gave Perales the opportunity to file an amended complaint, which he did on February 10, 2025. The Court will screen the amended complaint, as required by 28 U.S.C. §1915A.

### SCREENING OF THE AMENDED COMPLAINT

        As previously explained, the Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

## ALLEGATIONS OF THE AMENDED COMPLAINT

The allegations in the amended complaint are nearly identical to the allegations in the original complaint, but with the addition of Dr. Allsion, Perales' primary medical provider at the jail, as a defendant. According to Perales, he injured his back and right leg and foot in a car accident in August 2021. Perales was taken to the hospital where an MRI revealed no cord compression or other injury. The emergency room doctor noted that Perales was able to ambulate in the emergency room without complication. Perales was discharged in stable condition into the care of the police. Dkt. No. 1 at 3; Dkt. No. 8-1 at 3.

Perales explains that, at the jail, he experienced chronic pain and had difficulty walking and completing daily tasks. On August 6, 2021, Perales was seen by an offsite doctor who noted no explanation for Perales' pain and recommended he see a specialist. Perales continued to receive medication in response to his complaints of pain. On October 7, 2021, a jail nurse sent an email to jail correctional and medical staff, stating that "Perales should be using the walker at all times in the Pod except when he is getting his tray." The email also explained that, "[w]henever he leaves the pod he can use the wheelchair. We review with Dr. Allision weekly and [] will notify

2

you if anything changes." According to Perales, he was denied use of the wheelchair. He submitted grievances on this issue and was informed by John/Jane Doe nurses that the doctor approved use of a wheelchair only for long distances. A responding nurse further explained that medical staff wanted him to limit using the wheelchair because "sitting in the wheelchair all the time is going to make things worse." Dkt. No. 8 at 5-6; Dkt. No. 8-1 at 1.

Perales filed medical requests on October 26, 2021 about various concerns, including chronic pain in his foot and ankle. A nurse responded that the doctor had just examined him and had not found anything to explain why he was in pain. The nurse also confirmed that Perales could use the wheelchair for long distances and reminded him that he has been instructed numerous times that he has to walk. The nurse highlighted that he had had multiple outside appointments and had medications prescribed that the jail normally does not administer. She also instructed Perales to stop harassing medical staff about using a wheelchair, noting that "[r]epeatedly asking questions that you don't like the answers to is harassing." The nurse further noted that, while physical therapy is not provided at the jail, Perales had been given exercises to complete. Finally, the nurse confirmed that an offsite appointment with a bone and muscle specialist had been scheduled. Dkt. No. 8-1 at 8-13.

On October 29, 2021, a nurse clarified for Perales that he was allowed to use a wheelchair to get his food tray and for long distances. According to Perales, on November 7, 2021, he complained that he had a lot of pain the prior week. In response, a nurse stated, "You need to be putting weight on that foot and walking on it. There is nothing else we can give you for the pain. You can buy Tylenol or ibuprofen from commissary to use between med passes." Notes from a visit with an offsite specialist a couple of weeks later confirm that Perales had been prescribed and was taking 500mg of naproxen twice per day. The nurse also informed Perales that use of a

3

Case 2:24-cv-01454-BHL    Filed 02/27/25    Page 3 of 8    Document 9

you if anything changes." According to Perales, he was denied use of the wheelchair. He submitted grievances on this issue and was informed by John/Jane Doe nurses that the doctor approved use of a wheelchair only for long distances. A responding nurse further explained that medical staff wanted him to limit using the wheelchair because "sitting in the wheelchair all the time is going to make things worse." Dkt. No. 8 at 5-6; Dkt. No. 8-1 at 1.

Perales filed medical requests on October 26, 2021 about various concerns, including chronic pain in his foot and ankle. A nurse responded that the doctor had just examined him and had not found anything to explain why he was in pain. The nurse also confirmed that Perales could use the wheelchair for long distances and reminded him that he has been instructed numerous times that he has to walk. The nurse highlighted that he had had multiple outside appointments and had medications prescribed that the jail normally does not administer. She also instructed Perales to stop harassing medical staff about using a wheelchair, noting that "[r]epeatedly asking questions that you don't like the answers to is harassing." The nurse further noted that, while physical therapy is not provided at the jail, Perales had been given exercises to complete. Finally, the nurse confirmed that an offsite appointment with a bone and muscle specialist had been scheduled. Dkt. No. 8-1 at 8-13.

On October 29, 2021, a nurse clarified for Perales that he was allowed to use a wheelchair to get his food tray and for long distances. According to Perales, on November 7, 2021, he complained that he had a lot of pain the prior week. In response, a nurse stated, "You need to be putting weight on that foot and walking on it. There is nothing else we can give you for the pain. You can buy Tylenol or ibuprofen from commissary to use between med passes." Notes from a visit with an offsite specialist a couple of weeks later confirm that Perales had been prescribed and was taking 500mg of naproxen twice per day. The nurse also informed Perales that use of a

wheelchair was "up to our doctor here as you have been told multiple times." Dkt. No. 8-1 at 15-17, 32.

Perales next asserts that on November 12, 2021, he spoke to CO Anderson about his foot pain. Later that day, according to Perales, he approached a nurse during medication pass and she told him she would see him after she was done. Anderson allegedly told the nurse she could not see him after medication pass, and he instructed Perales to go back to his cell and submit a request. Perales asserts that he was on a tablet restriction and so could not submit a request, but Anderson refused to relay his concerns to medical staff. Two days later, on November 14, 2021, Perales submitted a grievance complaining that Anderson had denied him access to medical care. Richard Craig responded to the grievance by highlighting that Perales "took [his] medications and continued to want to discuss a subject that has been answered time and time again." He further noted that if Perales has "new concerns" he may "submit them the proper way," and "not disrupt medication pass." Dennis Kellen further responded to a different grievance on this same issue that, "[w]hile on lockdown tablets are not available. This does not preclude [an inmate] from contacting the duty officer for acute or emergency medical needs. In this case, the duty officer can then make contact with medical personnel as necessary." Dkt. No. 1 at 10-12; Dkt. No. 8-1 at 16, 21.

On November 19, 2021, Perales was examined offsite by a back and spine specialist, who recommended he continue taking naproxen twice a day for pain. He also opined that, "[f]or now, [Perales] may need a wheelchair for ambulation till he is evaluated by Orthopedics Department." On December 6, 2021, Perales was examined offsite by an orthopedics specialist. He recommended Perales wear a Cam boot for four to six weeks, and he also recommended physical therapy. The boot was given to Perales at the appointment, and the specialist prescribed a different

4

pain medication.  The specialist did not recommend Perales use a wheelchair.  Perales asserts that he did not receive physical therapy.  Dkt. No. 8 at 13-15; Dkt. No. 8-1 at 30-35.

### THE COURT'S ANALYSIS

It appears that Perales was a pretrial detainee at the time he was confined at the Walworth County Jail, so claims related to his medical care arise under the Fourteenth Amendment.  The Seventh Circuit has recently explained that, to state a claim, a plaintiff must allege "that defendants did not take reasonable available measures to abate the risk of serious harm to [the plaintiff], even though *reasonable officers under the circumstances would have understood the high degree of risk involved*, making the consequences of the defendants' conduct obvious."  *Pittman by and through Hamilton v. Madison Cty., Ill.*, 108 F.4th 561, 572 (7th Cir. 2024) (emphasis in original).  Put more succinctly, to state a claim, Perales must allege that he suffered from an objectively serious medical condition and that Defendants' responses to the condition were objectively unreasonable.  Perales has sufficiently alleged that his chronic back, leg, and foot pain was an objectively serious medical condition, so the Court's analysis will focus on whether his allegations reasonably suggest that Defendants responded unreasonably to that condition.

With regard to Dr. Allsion, who appears to have been Perales' primary provider at the jail, Perales may proceed on a claim that her failure to refer him to physical therapy despite multiple offsite specialists recommending that she do so, was objectively unreasonable.  A nursing note suggests that Perales was given stretches to perform on his own, but further development of the record is needed to determine whether Dr. Allsion acted reasonably in light of Perales' persistent complaints of pain and the specialists' recommendations.

Next, Perales asserts that numerous unidentified nurses and Dr. Allsion acted unreasonably when they refused to allow him to use a wheelchair as often as he wanted.  However,

5

it has long been held that inmates are not entitled to their preferred treatment. *See, e.g., Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Perales was repeatedly informed that Dr. Allsion wanted him to walk short distances with a walker because constant use of a wheelchair would worsen his condition. According to a nurse's note to correctional and medical staff, Dr. Allsion reviewed this decision weekly. Perales clearly disagrees with Dr. Allsion's decision, but he offers no factual allegations (other than his personal preference) from which the Court can reasonably infer that Dr. Allsion's decision or the nurses' deference to that decision was unreasonable or posed a serious and obvious risk to his health. *See, e.g., Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012). Indeed, the orthopedic specialist who evaluated Perales in December 2021 did *not* recommend use of a wheelchair, apparently agreeing with Dr. Allsion's conclusion that Perales would benefit from walking short distances. Perales therefore fails to state a claim against Dr. Allsion and the unidentified nurses on this basis.

Nor does Perales state a claim against Dr. Allsion or the numerous unidentified nurses based on allegations that the totality of the care he received in response to his complaints of pain was unreasonable. The documents Perales attached to his amended complaint indicate that he was seen by the jail doctor regularly, was prescribed different pain medications, was given stretches to complete, was provided a walker for short distances and a wheelchair for long distances, and was referred to multiple offsite specialists when the cause of his persistent pain could not be identified. Although Perales continued to be in pain, the Court cannot reasonably infer from the totality of the care he received that Defendants acted unreasonably in response to his complaints. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (noting that it "would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain.").

Finally, Perales fails to state a claim against CO Anderson, Richard Craig, or Dennis Kellen in connection with Anderson's alleged refusal to let Perales discuss his medical concerns with a nurse during medication pass. Inmates are not permitted to break jail rules just because they believe they have good reason to do so, and jail staff do not act unreasonably when they strictly enforce jail rules. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009) (holding that inmates "are and must be required to obey orders"). Per the documents Perales attached in support of his complaint, inmates are not permitted to seek general medical advice while nurses are handing out medication; instead, they must submit a medical request through the tablet, or, in the case of an emergency, contact an officer who can decide whether health services should be immediately notified.

Perales suggests that Anderson acted unreasonably because he refused to contact a nurse even though Perales had lost his tablet privileges for a few days. But Perales was not suffering a medical emergency, and Anderson's refusal delayed Perales' opportunity to submit a medical request by only a couple of days. There is no suggestion that Perales was harmed by this short delay, as medical staff was well aware of Perales' complaints of foot pain (indeed, he had personally raised the issue to a nurse just minutes before) and there was no need for emergency intervention in this long-standing condition for which Perales was already receiving care (in fact, Perales was seen by an offsite specialist just days later). *See, e.g.*, *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (holding that the delay, as opposed to the underlying condition, must cause some degree of harm). Perales therefore does not state a claim on this basis.

**IT IS THEREFORE ORDERED** that Perales fails to state a claim against CO Anderson, the John/Jane Doe Nurses, Richard Craig, and Dennis Kellen so the clerk's office may terminate them from this action.

7

Case 2:24-cv-01454-BHL    Filed 02/27/25    Page 7 of 8    Document 9

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the amended complaint and this order upon Dr. Allsion pursuant to Federal Rule of Civil Procedure 4. Perales is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Dr. Allsion shall file a responsive pleading to the amended complaint.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Milwaukee, Wisconsin on February 27, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge