# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**TONY PERALES,**

      **Plaintiff,**

  v.                             **Case No. 24-CV-1454**

**DR. DANIEL ALLISON,**

      **Defendant.**

---

## DECISION AND ORDER

---

Plaintiff Tony Perales, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Perales was allowed to proceed on a Fourteenth Amendment claim that defendant Dr. Daniel Allison treated his serious medical needs with objective unreasonableness. The defendant has moved for summary judgment. (ECF No. 23.) Briefing on the motion is complete and the motion is ready for a resolution. The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 4, 14.)

### FACTS

At all times relevant Perales was a pretrial detainee at the Walworth County Jail. (ECF No. 35, ¶¶ 1,6.) Perales was involved in a police chase that ended in a car crash on August 1, 2021. (*Id.*, ¶ 10.) After the crash, Perales was taken to the hospital where he "was found to have an acute disc bulge at the L4/L5 as well as sensory and motor deficits in the right leg." (*Id.*, ¶ 11.) He was discharged from the hospital the same day and booked into the jail. (*Id.*)

It is undisputed that, since the start of his incarceration, Perales wrote to the medical staff daily about his post-crash condition. (ECF No. 35, ¶ 13.) On August 4, 2021 (three days after the crash), defendant Dr. Allison examined Perales. (ECF No. 36, ¶ 11.) Perales asserts that Dr. Allison knew he had hit and injured a police officer in the August 1 crash and, because of that, they were unfriendly. (*Id.*, ¶¶ 10-11.) At that examination, Dr. Allison asserts that Perales was given a "daily exercise program sheet that he was supposed to complete two to three times a day." (ECF No. 35, ¶ 14.) Perales states he was never given a sheet or any other written physical therapy exercises. (*Id.*) Instead, at the appointment "Dr. Allison verbally told Perales to lean forward and stretch from side to side while standing in his walker and to pull his knee up to his chest while sitting down. . . Dr. Allison also told Perales to put weight on his right foot." (*Id.*) Perales states these were the only exercises Dr. Allison demonstrated during his stay at the jail. (*Id.*) Dr. Allison points to the medical records from this visit as proof that Perales was given a daily sheet of exercises, but Perales notes that the record does not state he was given a sheet—instead, it states, "Have also provided instructions on mild exercises that will help with the nerve pain." (*Id.*; ECF No. 26-3 at 7.)

Perales asserts that he regularly wrote and verbally asked Dr. Allison and other medical staff for physical therapy exercise pamphlets or written instructions, but his requests were ignored. (ECF No. 36, ¶ 13.) Perales states he did the exercises two-to-three times a day but they did not help. (*Id.*, ¶ 17.) Dr. Allison states that Perales "was non-compliant with completing the recommended exercises" though does not elaborate

on how he knew that other than citing to numerous vague references in the medical records. (ECF No. 35, ¶ 16; ECF No. 38 at 2.)

Perales continued to regularly notify Dr. Allison and the medical staff "that his back, knee, leg, and foot w[ere] often in severe pain, which restricted some of his daily living activities and would often prevent him from sleeping through the night." (ECF No. 36, ¶ 20.) On August 13, 2021, Dr. Allison again saw Perales, and Perales alleges that during the examination Dr. Allison told Perales he believed he was faking and lying about his pain. (*Id.*, ¶ 21.) He also told Perales "to stop complaining to the medical staff about his injuries and pain." (*Id.*, ¶ 22.)

On September 30, 2021, Dr. Allison again examined Perales, and at this examination Perales told Dr. Allison "that he did not feel safe with Dr. Allison or his medical staff because he had previously called Perales a liar and a faker. Perales asked to see his own primary doctor." (ECF No. 36, ¶ 23.) According to Perales, Dr. Allison acknowledged that he previously questioned Perales's truthfulness when it came to his pain but now believed Perales's pain was real. (*Id.*, ¶ 24.) Dr. Allison also explained to Perales that, because he was incarcerated, Perales had no right to see his primary care doctor and instead was limited to the jail medical staff. (*Id.*, ¶¶ 26, 27.) After this appointment, Dr. Allison had non-defendant Sgt. Craig issue a conduct report to Perales for harassing medical staff. (*Id.*, ¶ 30.) As a result, Perales was "given a minor discipline of 3 hours lockdown and warned that any further issues will result in progressive discipline." (*Id.*, ¶ 32.)

On October 15, 2021 (two and a half months after the accident), Perales went off-site to Aurora Health St. Luke's Physiatry Department and was examined by non-defendant Dr. Amit Jhaveri, who "conducted an EMG nerve condition study." (ECF No. 35, ¶ 17.) Dr. Jhaveri observed that "[a]ll spinal areas from L2-S1 showed no electrophysiological trauma for lower right extremity." (*Id.*, ¶ 18.) He referred Perales to Dr. Jacobson at Aurora Back and Spine. (*Id.*, ¶ 19.)

On November 9, 2021, Perales filed a written request to receive physical therapy. (ECF No. 35, ¶ 20.) He was told that physical therapy is not offered at the jail. (*Id.*) He was also "instructed to continue doing the exercises and stretches that the health services department gave him," which Perales states were simply the moves Dr. Allison showed him at the August 4 appointment. (*Id.*, ¶ 21.)

On November 19, 2021, non-defendant Dr. Mustafa Farooque from Aurora St. Luke's Back and Spine program examined Perales. (ECF No. 35, ¶ 22.) Dr. Farooque noted that Perales "did not have radicular symptoms and [there was] no significant focal neurological deficit that could be attributed to the lumbar spine." (*Id.*, ¶ 23.) Dr. Farooque "recommended a referral to the Aurora Orthopedics department for further evaluation of Mr. Perales right foot, ankle, and knee pain and recommended physical therapy for Mr. Perales' back pain. (*Id.*, ¶ 24.) Dr. Farooque also provided Perales a list of off-site locations located near the jail where he could receive physical therapy. (ECF No. 36, ¶ 38.) Perales asserts that, prior to his appointment with Dr. Farooque, medical staff at the jail included a note in the medical files given to Dr. Farooque that the jail did not offer physical therapy and requested that Dr. Farooque not recommend physical

Case 2:24-cv-01454-WED     Filed 06/04/26     Page 4 of 9     Document 40

therapy because Dr. Allison did not want to send Perales off site for physical therapy. (*Id.*, ¶¶ 35-36.) After this appointment, Dr. Allison placed a referral to Aurora Orthopedics for an x-ray and orthopedic consult but did not refer or otherwise provide Perales with physical therapy. (ECF No. 35, ¶ 25.)

On December 6, 2021, non-defendant Dr. Jonathan Shih at Aurora Orthopedics Department examined Perales and diagnosed his "right foot with tendonitis with edema, recommended physical therapy, and ordered a (Controlled Ankle Motion) CAM boot to be worn, and a prescription for 75 mg of diclofenac for pain." (ECF No. 35, ¶ 26.) It is undisputed that the CAM boot alleviated some of Perales's foot pain, which Dr. Shih noted at Perales's follow-up appointment on January 21, 2026. (*Id.*, ¶ 27; ECF No. 36, ¶ 41.) Presumably on the same day (it is unclear from Dr. Allison's proposed findings of fact) Perales was examined by non-defendant Dr. Lisa A. Sienkiewicz, also at Aurora Orthopedics, for pain in his knee. (ECF No. 35, ¶ 29.) Dr. Sienkiewicz noted that Perales's "condition was improving with time." (*Id.*, ¶ 30.) She also "recognized that physical therapy was not an option while Mr. Perales was incarcerated," which Perales states is because jail staff notified outside providers not to recommend physical therapy because Dr. Allison did not want to send Perales off site. (*Id.*, ¶ 31.)

In December 2022 (over a year after the accident), Perales was sent to Stanley Correctional Institution, where he was able to participate in physical therapy. (ECF No. 36, ¶ 37.) Perales asserts that proper and regular physical therapy greatly alleviated his pain. (*Id.*, ¶ 38.) He also notes that he was diagnosed with a bone spur in his right foot that "was likely caused by the previous trauma to his right foot." (*Id.*, ¶ 50.)

5

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

6

Perales claims that Dr. Allison violated his constitutional rights when he failed to either provide him physical therapy or refer him to physical therapy.

At the outset the court notes a few issues with Dr. Allison's materials in support of his motion for summary judgment. First, he applied the wrong standard in his argument. It is undisputed that Perales was a pretrial detainee at the time. As such, as District Judge Ludwig[1] noted in his screening order, Perales's rights arise under the Fourteenth Amendment's objective unreasonableness standard--*not* under the Eighth Amendment's deliberate indifference standard. (*See* ECF No. 9 at 5; *Miranda v. Cty. Of Lake*, 900 F.3d 335, 352 (7th Cir. 2018)). The Fourteenth Amendment's objective unreasonableness standard is less stringent in terms of what a plaintiff must prove.

To demonstrate a claim under the Fourteenth Amendment, a plaintiff must show that the defendants "acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [his] case." *McCann v. Ogle County, Ill.*, 909 F.3d 881, 886 (7th Cir. 2018) (citations omitted). A showing of mere negligence or even gross negligence is insufficient. *Id.* Next, he must show that the defendant's conduct was objectively unreasonable. *Id.* The focus is on "the totality of the circumstances" and whether the defendant's response was reasonable without regard to any subjective belief he may have held. *Id.*

---

[1] Prior to the parties' consent to the jurisdiction of this court, the case was before Judge Ludwig.

7

The Eighth Amendment standard requires a showing "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The court will disregard Dr. Allison's arguments made under the more stringent Eighth Amendment standard. The court also notes that Perales identified and made his arguments under the correct standard.

Dr. Allison also failed to respond to Perales's proposed findings of fact, (ECF No. 36), as required by Civil L.R. 56(b)(3)(b). As such, the court will construe Perales's proposed findings of fact as undisputed. *See* Fed. R. Civ. P. (e)(2).

When considering Perales's undisputed facts under the *correct* legal standard, it is clear there are genuine issues of material fact that preclude summary judgment. A reasonable factfinder could conclude that Dr. Allison's refusal to provide physical therapy was objectively unreasonable. Courts have held that failing to provide a plaintiff with adequate physical therapy may violate a plaintiff's constitutional rights. *See Rahoi v. Sirin*, 252 F.R.D. 464, 477 (W.D. Wis. 2008) (finding that whether the plaintiff required physical therapy is a question of material fact); *Burton v. Downey*, 805 F.3d 776, 787 ( 7th Cir. 2015) (suggesting that failing to provide a plaintiff with any physical therapy could amount to a constitutional violation); *see also Buchanan v. Talbot*, Case No. 1:19-cv-0497, 2021 WL 4454109 at *7 (S.D. Ind. Sept. 29, 2021).

Perales demonstrates that a reasonable factfinder could conclude that Dr. Allison failed to provide him adequate physical therapy. Although Perales asserts he was never given worksheets or written materials about physical therapy exercises, Dr. Allison states he did provide those materials. Perales states that he completed the exercises as

8

recommended, but they provided no pain relief, whereas Dr. Allison cites to vague second-hand reports that Perales was not doing the exercises as recommended. Perales requested to be sent out to physical therapy on the recommendation of two outside specialists, but Dr. Allison refused to send him out or provide him any additional physical therapy exercises other than the few Dr. Allison showed him on August 4, 2021. While one of the specialists did not recommend physical therapy, a material question of fact exists as to whether this finding was based on medical judgment or made at Dr. Allison's request not to recommend physical therapy because the jail could not accommodate it. If the latter, that could be found to be objectively unreasonable.

## CONCLUSION

For the foregoing reasons, Dr. Allison's motion for summary judgment is denied. The court will set a status conference at a later date to discuss next steps.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Dr. Allison's motion for summary judgment (ECF No. 23) is **DENIED.**

Dated at Milwaukee, Wisconsin this 4th day of June, 2026.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge

9